FILED

2025 Sep-09  AM 08:29
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION

| | | |
|---|---|---|
| **TONYA ARMSTEAD MILLER,** | ] | |
| *Individually and as Administrator* | ] | |
| *and personal representative of the estate* | ] | |
| *of* **RODERICK MARCELL INGE** | ] | |
| | ] | |
| **Plaintiff,** | ] | **7:23-cv-00436-ACA** |
| | ] | |
| **v.** | ] | |
| | ] | |
| **GERALD BURTON, et al.,** | ] | |
| | ] | |
| **Defendants.** | ] | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Tonya Armstead Miller brings five claims on behalf of herself and the estate of Roderick Marcell Inge relating to the fatal shooting of Mr. Inge. (Doc. 44). Specifically, Ms. Miller alleges that Defendant Chief Brent Blankley "maintained a system of grossly inadequate training" that caused officers to violate Mr. Inge's Fourth and Fourteenth Amendment rights ("Count One"); that Defendant Officers John Beasley and Elijah Rodriguez unlawfully seized Mr. Inge by shooting and killing him in violation of his Fourth and Fourteenth Amendment rights ("Counts Two and Three"); and that Officers Beasley and Rodriguez negligently caused the death of Mr. Inge in violation of Alabama law. ("Counts Four and Five"). (Doc. 44 at 4–11). In each count, Ms. Miller also individually asserts a claim based on her own suffering. (*See id.* ¶¶ 19, 32, 45, 51, 57). Defendants move for summary

judgment on all claims but do not address Ms. Miller's individually asserted claims. (Doc. 71). Ms. Miller's responses rely in part on an expert report (docs. 75–77), which Defendants have moved to strike (doc. 78).

For the reasons stated below, the court **GRANTS** Defendants' motion to strike (doc. 78), and **GRANTS** Defendants' motion for summary judgment (doc. 71). Accordingly, the court **WILL ENTER SUMMARY JUDGMENT** in favor of Defendants and against Ms. Miller for her claims as the personal representative of Mr. Inge's estate on all five counts. Because Defendants' motion for summary judgment does not address Ms. Miller's individual claims, the court **ORDERS** Ms. Miller to **SHOW CAUSE** on or by **September 19, 2025**, why the court should not enter judgment independent of the motion in favor of Defendants pursuant to Federal Rule of Civil Procedure 56(f).

## I.    MOTION TO STRIKE

The court begins with the motion to strike Daniel Busken's expert report and affidavit. (Doc. 78). Defendants contend (1) Ms. Miller did not timely produce the report to them, and (2) it is not in the appropriate form. (Doc. 78 at 2–3). Federal Rule of Civil Procedure 26(a)(2)(A) requires parties to disclose expert witnesses they may use at trial. "[T]his disclosure must be accompanied by a written report—prepared and signed by the witness—if the witness is one retained . . . to provide expert testimony." The court ordered Ms. Miller to disclose any experts and their

reports by April 29, 2024. (Doc. 53 at 2). No extensions of any deadlines affected this deadline. (*See* docs. 55, 64, 68).

The parties agree Ms. Miller did not provide any notice that Mr. Busken had been retained as an expert witness for Ms. Miller until May 3, 2025 and did not produce Mr. Busken's report until she responded to the motion for summary judgment on October 24, 2024. (Doc. 78 at 2–3; doc. 81 at 2; doc. 82 at 6). The notice provided on May 3, 2025 identified Mr. Busken and provided his curriculum vitae, but it did not include his expert report, his affidavit, or any of the conclusions he drew in his report. (Doc. 78-1).

"Because the expert witness discovery rules are designed to allow both sides in a case to prepare their cases adequately and to prevent surprise, compliance with the requirements of Rule 26 is not merely aspirational." *Reese v. Herbert*, 527 F.3d 1253, 1266 (11th Cir. 2008) (quotation marks omitted). A party's failure "to provide information or identify a witness as required by Rule 26(a)" precludes the party from using "that information or witness to supply evidence on a motion . . . unless that failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1)

Ms. Miller does not argue that her failure to comply with the deadline set by the court's order was harmless or substantially justified. (*See generally* docs. 81, 82). Instead, she argues that Defendants did not object to her late notice of Mr. Busken or seek to depose him. (Doc. 81 at 2–4; doc. 82 at 7–8). But Defendants failure to

object or seek to depose Mr. Busken does not make Ms. Miller's noncompliance with the deadline harmless or substantially justified. To the contrary, her late disclosure prejudiced Defendants by denying them access to the substance of his opinion until after they had already moved for summary judgment. Accordingly, the court **GRANTS** the motion to strike Mr. Busken's report and affidavit, and the court will not consider these materials in evaluating the motion for summary judgment.

## II.    BACKGROUND

On motions for summary judgment, the court "draw[s] all inferences and review[s] all evidence in the light most favorable to the non-moving party." *Fort Lauderdale Food Not Bombs v. City of Fort Lauderdale*, 901 F.3d 1235, 1239 (11th Cir. 2018) (quotation marks omitted).

This court requires that a non-movant seeking to dispute the movant's statement of undisputed facts must respond "in separately numbered paragraphs that coincide with those of the moving party's claimed undisputed facts" and by providing "a specific reference to those portions of the evidentiary record upon which the dispute is based." (Doc. 3 at 16). Ms. Miller did not comply with those requirements, instead setting out her own statement of facts, the majority of which are the same as Defendants' statement of facts. (*Compare* doc. 75 at 4–8, *with* doc. 72 at 10–21). In the rare instances when Ms. Miller disagrees with Defendants' assertion of a fact, she provides no citation to the record to support the existence of

a dispute. (*See* doc. 75 at 6 ¶¶ 10, 13–14, 8 ¶ 26). The court therefore accepts as undisputed the facts Defendants have properly supported with evidence. Fed. R. Civ. P. 56(c)(1).

In April 2021, Tuscaloosa Police officers responded to a call in which a mother reported that Mr. Inge, the father of her children, had shot her vehicle with her and the children inside. (Doc. 71-1 ¶ 3; doc. 71-1, "Slade Martin Body Camera," at 00:00:03–00:00:26). She informed officers that Mr. Inge carried a Smith and Wesson .380. (doc. 71-1, "Slade Martin Body Camera," at 00:07:26–00:07:36). While officers were investigating the incident, Mr. Inge returned to the scene. (*Id.* at 00:11:52–00:11:57). An officer pulled Mr. Inge over, but Mr. Inge drove away before fleeing on foot into the woods (*id.* at 00:17:56–00:21:15). At this point Officers Rodriguez and Beasley joined the search for Mr. Inge. (Doc. 71-2 ¶ 2; doc. 71-3 ¶ 2).

Officer Rodriguez found Mr. Inge in the woods and ordered him to show his hands. (Doc. 71-2, "Elijah Rodriguez Body Camera," at 00:01:51–00:01:55). As Officer Rodriguez gave this command, multiple gunshots can be heard. (*Id.* at 00:01:56–00:02:01; doc. 71-3, "John Beasley Body Camera," at 00:06:38–00:06:42). Both Officer Rodriguez and Officer Beasley attest that Mr. Inge discharged his weapon before they returned fire. (Doc. 71-2 ¶ 5; doc. 71-3 ¶ 5).

Officers later recovered Mr. Inge's firearm in front of his body. (Doc. 71-3, "John Beasley Body Camera," at 00:08:40–00:09:03).

An autopsy of Mr. Inge found that he suffered multiple gunshot wounds to his chest, left arm, back, buttocks, abdomen, and left leg. (Doc. 71-5 at 22). One wound to his chest was a "tight contact" wound surrounded by soot and caused by a jacketed bullet with a ballistic tip. (*Id.*). Ballistics testimony concluded that the jacketed bullet was fired from Mr. Inge's Smith and Wesson .380, while the other bullets recovered from his body were fired from a Glock pistol (doc. 71-5 at 28), carried by one of the officers (doc. 71-2 ¶ 6; doc. 71-3 ¶ 6). None of the other gunshot wounds were marked by soot or stippling. (*Id.*). The Glock pistols used a different type of ammunition that was not ballistic tipped. (Doc. 71-2 ¶ 6; doc. 71-3 ¶6).

The medical examiner concluded that Mr. Inge died by suicide. (Doc. 71-5 at 21). Dr. Edward Reedy, chief medical examiner for the Alabama Department of Forensic Science, agreed that the cause of death was a self-inflicted gunshot wound. (Doc. 71-5 at 5). He further attested that the self-inflicted wound led to Mr. Inge's death "nearly instantaneously, certainly within a matter of a minute or two." (*Id.* at 6). The other gunshot wounds were "not as rapidly fatal" and may not have been fatal if they were the only wounds Mr. Inge suffered and he had received prompt medical attention. (*Id.*).

## III.   DISCUSSION

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bowen v. Manheim Remarketing, Inc.*, 882 F.3d 1358, 1362 (11th Cir. 2018) (quotation marks omitted).

Each of Ms. Miller's claims against Officers Beasley and Rodriguez requires that she prove a causal connection between their actions and Mr. Inge's death. Counts Two and Three assert that the officers are liable under 42 U.S.C. § 1983 for violating Mr. Inge's Fourth and Fourteenth Amendment rights. (Doc. 44 at 5–9). To prove a claim under § 1983, a plaintiff must establish a causal link between the actions of the officers and the deprivation of rights. *See Zatler v. Wainwright*, 802 F.2d 397, 401 (11th Cir. 1986) ("[S]ection 1983 requires proof of an affirmative causal connection between the official's acts or omissions and the alleged constitutional deprivation."). In Counts Four and Five, Ms. Miller alleges that the officers are liable for wrongful death under Alabama law. (Doc. 44 at 9–11). That cause of action also requires a showing that the officers proximately caused Mr. Inge's death. *Hughes v. Marley*, 390 So. 3d 545, 549 (Ala. 2023).

Here, the undisputed evidence is that Officers Rodriguez and Beasley did not cause Mr. Inge's death because he died by suicide. (*See* doc. 71-2 ¶ 5; doc. 71-3 ¶ 5;

Doc. 71-5 at 5–6, 21). Accordingly, they are entitled to summary judgment on Counts Two through Five. And because Counts Two and Three fail, so too does Count One which asserts that Chief Blankley is liable for failing to supervise, train, and retain police officers, in violation of the Fourth and Fourteenth Amendments. (Doc. 44 at 4–5).[1] A supervisor can be liable for failing to train his employees only where a subordinate violated the plaintiff's rights. *Gish v. Thomas*, 516 F.3d 952, 955 (11th Cir. 2008); *Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005); (*see* doc. 72 at 23–25). Accordingly, summary judgment is also warranted with respect to Count One.

## III.   INDIVIDUAL CLAIMS

Ms. Miller brings her claims as the personal representative of Mr. Inge's estate and individually. (Doc. 44 at 1). In each count, Ms. Miller alleges that she "suffered and shall continue to suffer without the presence of [Mr. ]Inge, her Intestate." (Doc. 44 ¶¶ 19, 32, 45, 51, 57). But Defendants' motion to dismiss does not directly address Ms. Miller's individually asserted claims. (*See* doc. 72). Nevertheless, Ms. Miller's federal claims assert violations of 42 U.S.C. § 1983, but § 1983 does not establish any independent rights. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002). To the extent Ms. Miller seeks to recover based on the alleged violations of Mr. Inge's

---

[1] Defendants construe Count Five as alleging both a claim that Chief Blankley violated federal law and a claim that he violated Alabama state law. (Doc. 72 at 35–36). But the court reads Count Five as asserting only a violation of federal law. (*See* doc. 44 at 10–11).

rights, the court has already determined there were no violations of Mr. Inge's rights, and her individual claims asserting those rights would necessarily fail. Furthermore, because the court will enter summary judgment on Ms. Miller's other claims, any derivative claims she seeks to bring under Alabama law also fail. *See Ex parte N.P.*, 676 So. 2d 928, 930 (Ala. 1996). Accordingly, the court **ORDERS** Ms. Miller to **SHOW CAUSE** on or by **September 19, 2025**, why the court should not enter judgment independent of the motion pursuant to Federal Rule of Civil Procedure 56(f) on her claims as an individual included in Counts One through Five.

## IV.    CONCLUSION

The court **GRANTS** Defendants' motions to strike Mr. Busken's expert report and affidavit. (Doc. 78). The court **GRANTS** Defendants' motion for summary judgment (doc. 71) and **WILL ENTER SUMMARY JUDGMENT** in Defendants' favor on all of Ms. Miller's claims as the personal representative of Mr. Inge's estate. The court **ORDERS** Ms. Miller to **SHOW CAUSE** on or by **September 19, 2025**, why the court should enter judgment independent of the motion pursuant to Federal Rule of Civil Procedure 56(f) on her individual claims included in Counts One through Five.

**DONE** and **ORDERED** this September 9, 2025.

_____
**ANNEMARIE CARNEY AXON**

UNITED STATES DISTRICT JUDGE